Gregorio F. **VARGAS**, Petitioner–Appellant,

v.

Ronald B. **SWAN**, Respondent–Appellee.

No. 87–1769.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1988.

Decided Aug. 12, 1988.

Rehearing Denied Nov. 4, 1988.

dy to establish habeas jurisdiction under 28 U.S.C. § 2241.

## I.   BACKGROUND

Gregorio Vargas left Cuba and landed in Key West, Florida on June 4, 1980, along with many of his countrymen. Generally referred to as the Mariel Freedom Flotilla, or Mariel Cubans, their significant numbers strained the Immigration and Naturalization Service's ability to make the necessary immigration determinations. Aliens entering the country for the first time, such as Vargas, typically are subject to *exclusion* from the United States, whereas aliens having already entered and who establish the necessary presence in this country typically are subject to *deportation.* In order to assure that Mariel Cubans awaiting immigration determinations were still subject to exclusion, and not to deportation because of their prolonged presence in the United States, the INS placed these individuals on "parole." The effect of the parole was to maintain a fiction that Vargas and others had never technically entered the country and were therefore still subject to exclusion, and not deportation. Thus, after he was detained first in Florida and then at Ft. McCoy, Wisconsin, Vargas was paroled into the United States in 1980. Apparently the parole was set to expire sometime in 1981. The INS states that it was automatically renewed and continues in effect until this very day. The record is bereft of any evidence of this renewal.

Charles G. Curtis, Jr., Foley & Lardner, Madison, Wis., for petitioner-appellant.

Alison R. Drucker, U.S. Dept. of Justice, Office of Immigration Civil Div., Washington, D.C., for respondent-appellee.

Before WOOD, Jr. and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Vargas, an alien incarcerated within the Wisconsin state penal system, seeks an expedited determination from the United States Immigration and Naturalization Service of whether he will be excluded from the United States upon his release from state prison. To reach the merits of this issue the district court *assumed* that Vargas was sufficiently within federal custody to support the court's habeas jurisdiction, and denied the writ. However, we must decide whether the INS's filing of a "detainer" with Wisconsin or its granting of "parole" status constitutes sufficient custo-

On October 29, 1985, Vargas was convicted of attempted first degree murder in the Grant County, Wisconsin Circuit Court and sentenced to an indeterminate sentence of no more than twenty years, to be served in the Waupun County Correctional Facility. The Wisconsin Court of Appeals affirmed the conviction, and the Wisconsin Supreme Court denied review. The INS sent what it labelled a "detainer" to Waupun, asking that the INS be notified of Vargas's pending release at least thirty days before it occurred. Eleven months later Vargas wrote the INS asking that the INS "either process the detainer and hold a hearing to determine whether I am an excludable alien

or to drop the detainer altogether." His request was denied; subsequently he repeated his request in this habeas petition.

## II. DISCUSSION

We must decide if the INS has sufficient custody of Vargas to support habeas jurisdiction. The applicable habeas section states that "[t]he writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Vargas is in the physical custody of Wisconsin, not the INS, but he asserts that the INS's "parole" and "detainer" sufficiently restrain him so as to constitute custody supporting federal habeas jurisdiction. On its face the statute does not require actual physical restraint to establish custody, and case law reaches the same conclusion: "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English–speaking world to support the issuance of habeas corpus." *Jones v. Cunningham,* 371 U.S. 236, 240, 83 S.Ct. 373, 376, 9 L.Ed.2d 285 (1963); *accord Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 300, 104 S.Ct. 1805, 1809, 80 L.Ed.2d 311 (1984); *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 488–89, 93 S.Ct. 1123, 1126, 35 L.Ed.2d 443 (1973); *Peyton v. Rowe,* 391 U.S. 54, 67, 88 S.Ct. 1549, 1556, 20 L.Ed.2d 426 (1968); *Harts v. Indiana,* 732 F.2d 95, 96 (7th Cir.1984) (per curiam); *Arias v. Rogers,* 676 F.2d 1139, 1142 (7th Cir.1982); *United States ex rel. Grundset v. Franzen,* 675 F.2d 870, 872 (7th Cir.1982); *Burris v. Ryan,* 397 F.2d 553, 555 (7th Cir.1968).

"Whether someone who is not under physical constraint can be considered in custody depends on the amount of restriction placed on his or her individual liberty." *Harts,* 732 F.2d at 96 (citing *Hensley v. Municipal Court,* 411 U.S. 345, 349, 93 S.Ct. 1571, 1573, 36 L.Ed.2d 294 (1973)). The restriction must amount to a "severe[ ] restraint on individual liberty" before it is

deemed custody. *Hensley,* 411 U.S. at 351, 93 S.Ct. at 1574.

*Detainer*

The INS argues that the "detainer" here really is not a detainer but merely serves to advise the Waupun correctional facility that the INS may find Vargas excludable and requests that the institution inform the INS of Vargas's expected release date thirty days beforehand. The INS notes that the face of the detainer states that it is "for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments or other treatment which he would otherwise receive." It is nothing more than "an internal administrative mechanism," according to the INS, emphasizing that it is accompanied by neither a warrant of arrest nor by an order to show cause.

Vargas takes the approach that this *is* a detainer, and in general ordinary detainers have been found sufficiently restrictive to demonstrate custody; therefore, Vargas is in custody. Vargas notes that the "detainer" is labelled "Immigration Detainer—Notice of Action By Immigration and Naturalization Service" and that Waupun is asked to "Accept this notice as a detainer."

In order to reach our conclusion, we will not simply take the detainer label affixed here and rotely match it up with cases labelled detainer cases. Definitionally detainer or detainer plus something else, such as a warrant, is sufficiently broad in the immigration context to counsel against such a simplistic approach. Instead we will consider the effect of the INS's action and whether it restrains Vargas to the extent found sufficient to establish custody in other detainer cases.

What Vargas challenges here is future INS action regarding his immigration status. The INS contends that the very uncertainty of conduct that may or may not occur in the future counsels against finding sufficient custody to establish jurisdiction here, the implication being that at the time Vargas ultimately is released from state custody the INS may decline to exert any control at all over him. Realistically we

doubt that the INS will forego an attempt to exclude or deport Vargas, but in any event that is beside the point. The Supreme Court has held that challenges to future confinement are actionable in a habeas action. *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed. 2d 439 (1973); *Braden*, 410 U.S. at 488–89 & n. 4, 93 S.Ct. at 1126–27 & n. 4; *Peyton*, 391 U.S. at 67, 88 S.Ct. at 1556.[1]

Defining a detainer for the immigration context can be an elusive undertaking, as there is scant case law on the issue. One case that did arise in an immigration context found a detainer filed on the basis of a warrant sufficient to establish "technical custody ... until the individual is released from the institution at which time actual custody is obtained." *Chung Young Chew v. Boyd*, 309 F.2d 857, 865 (9th Cir.1962). The warrant in *Chung Young Chew* was an important factor in deciding that the defendant was in custody. Cases that have found a detainer sufficient to establish custody in other contexts have not always involved a warrant, nevertheless in such cases there was some indication or it was otherwise understood by the institution that it should detain the inmate for the agency filing the detainer. In several of these cases a direction to "hold" an inmate gave the detainer the necessary force. Such a case is this circuit's *Orito v. Powers*, where the court found a state detainer, apparently without a warrant, filed with federal officials sufficient to constitute custody for purposes of section 2241: " 'Although the Wisconsin authorities have not filed a formal detainer with the federal correctional institution at Sandstone, it is

clear that the federal authorities have been notified of the state conviction and consider that notice to constitute a "hold" upon Mr. Orito.' " 479 F.2d 435, 437 (7th Cir.1973) (quoting 347 F.Supp. 150, 151 (E.D.Wis. 1972)). The "hold" had an effect analogous to that of the warrant in *Chung Young Chew*. Similarly the Supreme Court in *Braden* decided that because "the Alabama warden acts ... as the agent of the Commonwealth of Kentucky in *holding* the petitioner pursuant to the Kentucky detainer, we have no difficulty concluding that petitioner is 'in custody' for purposes of § 2241(c)(3)." 410 U.S. at 489 n. 4, 93 S.Ct. at 1127 n. 4 (emphasis added). *See Moody v. Daggett*, 429 U.S. 78, 80–81 n. 2, 97 S.Ct. 274, 275 n. 2, 50 L.Ed.2d 236 (1976) (The Court described a detainer, unaccompanied by a warrant, as "an internal administrative mechanism to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity to act—in this case by taking the inmate into custody or by making a parole revocation determination."); *Rose v. Morris*, 619 F.2d 42, 44 (9th Cir.1980) ("[A] detainer in the form of a communication from the Washington State Board of Prison Terms and Paroles *requesting* that it be notified before Rose was to be released from federal custody so that it could *retake* Rose and require him to begin serving the balance of his sentences, is sufficient 'custody' to allow a habeas corpus action." (Citation omitted.) (Emphasis added.)); Interstate Agreement on Detainers Act, 18 U.S.C. App. §§ 1–8 [2]

---

1. In *Braden* a forceful dissent questioned the propriety of future custody as a source of habeas jurisdiction, but the criticism appears qualified by the dissent's concern that the Court was reviewing future state custody, which necessitated more circumspect federal review in cases where the defendant had yet to be convicted. *Braden*, 410 U.S. at 507–08, 93 S.Ct. at 1135–36 (Rehnquist, J., dissenting). Here, to the contrary, is a case of federal habeas review of future federal confinement; the caution necessary when state interests are involved is not present.

The INS also points to the presence of the state as important for another reason: in *Moody v. Daggett* the Court noted that when a federal

detainer is placed against an inmate currently in state custody, the detainer is a matter of comity. 429 U.S. 78, 81 n. 2, 97 S.Ct. 274, 275 n. 2, 50 L.Ed.2d 236 (1976). This may be so, but we doubt that states routinely ignore such detainers, and considering the Court's view regarding future custody, future federal confinement in such circumstances is not so speculative that habeas jurisdiction is not available. *See Peyton v. Rowe*, 391 U.S. 54, 62, 88 S.Ct. 1549, 1553, 20 L.Ed.2d 426 (1968).

2. The Interstate Agreement on Detainers pertains to "untried indictment, informations, or complaints" pending in United States courts. 18 U.S.C.App. § 2. Thus criminal actions are sub-

(legislative history describes a detainer under the Act as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending charges in another jurisdiction." H.R.Rep. No. 1018, 91st Cong., 2d Sess. (1970) and S.Rep. No. 1356, 91st Cong., 2d Sess. 2 (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4864, 4865).

■ However labelled, an action that has as part of its effect the "holding" of a prisoner for a future custodian who has evidenced an intent to retake or to decide the prisoner's future status at the end of his or her current confinement serves to establish custody for habeas purposes. Thus for Vargas to be deemed in custody pursuant to the INS detainer, the effect of the detainer here must be that Wisconsin places a hold on Vargas.

■ With this in mind, we move to a determination of the effect of the detainer here, a document referred to as Form I–247 by the INS, a copy of which is an Appendix to this opinion. We will highlight several of its features, leaving the reader to refer to the Appendix for a full review of its contents. The I–247 is a mass-produced, fill-in-the-blank form. One section *advises* the addressee-institution that action has been taken regarding the inmate listed on the form: the institution determines what the action is by reading those descriptions that are preceded by a box that has been marked. Separate descriptions that may be marked advise the institution that an investigation has been initiated, an order to show cause has been served, a warrant of arrest has been served, or that deportation has been ordered. Of these four, only the first was marked on the Vargas form: the precise language reads "Investigation has been initiated to determine whether this person is subject to excludable [sic] from the U.S." The section following this advisory portion of the form *requests* that the institution take certain actions. It follows a format similar to the preceding section, by marking a box the INS describes what

is requested of the institution. All of this section's boxes were marked on the Vargas form, meaning that the INS asked the institution to accept this as a detainer, which in regards to Vargas's institutional programming was for notification purposes only; sign and return a copy of the form to the INS; notify the INS of the date of release at least thirty days before the release; and notify the INS if the inmate dies or is transferred. The title at the top of the form reads in part "Immigration Detainer."

Certainly we are concerned with the effect of the "detainer" and not mere labels, but because of the limited record here we cannot ignore the fact that the form itself reads "Accept this form as a detainer." The INS emphasizes that this language is followed by a disclaimer that the reader treat this detainer as notice only. The full disclaimer states "This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments or other treatment which he would otherwise receive." Thus it seems that this provision can be fairly read as an attempt to limit the detainer's effect on present programming or decision-making by the state and not necessarily as referring to the degree of control the INS plans to exert under the detainer once Vargas is released. Therefore the disclaimer does not affect our determination of whether the detainer shows custody. The important question remains what is the effect of "Accept this as a detainer." This language is found under that section of the form that requests that the institution act in the manner requested by the INS. Certainly in the same section a separate item also requests that the institution notify the INS thirty days before release, but the face of the form does not suggest that the thirty-day language in any way limits the "Accept this notice as a detainer" language. The INS must provide more if it hopes to have us treat what appears to be a detainer as something less.

---

ject to the Agreement. The detainer here, which is for an action for exclusion or deportation, which is a civil matter and not before a court as

required by the Agreement, is not within the reach of the Agreement. *Argiz v. United States,* 704 F.2d 384, 387 (7th Cir.1983).

And even though we agree with the INS that a preceding part of Vargas's form does not indicate that an order to show cause or an arrest warrant has been served, this is inconsequential because it is contained in a portion of the form that is advisory and makes no request of the institution. Moreover, as our review of the case law suggests, a warrant may not be necessary. It may very well be that some will understand the failure to mark on the form or to include a warrant means that the "detainer" here is not fully operative and is ineffectual to restrain Vargas. On the limited record before us, however, it may be just as reasonable to believe that the practice of institutions receiving such notice, or at least the practice of Waupun, is to treat these forms, whether accompanied by the advisory material or not, as being requests to hold an inmate at the end of his sentence until the INS can take him into custody. Irrespective of which is true, understandings outside the record are irrelevant. Our inquiry is constrained by what is in the record, and the record does not tell us whether the failure to list and attach an order to show cause or warrant of arrest under an advisory section limits the "Accept this notice as a detainer" language to the extent that Vargas is not sufficiently restrained by the INS to establish custody. Nor does it in other ways support the INS's assertion that this is not a detainer but a comity-restrained notice document.

The INS has failed to place sufficient evidence in the record in order to establish what effect this "detainer" actually had. To the contrary, one bit of evidence in the record, a Wisconsin corrections department form filled in to show that Vargas received notice of the detainer cuts the other way. It is unsigned, but filled in by the institution and reads "This is to acknowledge that on this date November 29, 1985 I was notified by the authorities of the Dodge Correctional Inst., Waupun, Wisconsin, that HOLD ORDER (Detainer) HAS BEEN FILED AGAINST ME IN BEHALF OF IMMIGRATION AND NATURALIZATION SERVICE...." (Capitals in original.) It may be argued that this form notice was not tailored to describe Vargas's particular "detainer" but it at least suggests that Wisconsin may have understood that the detainer was a hold order. The highlighted language implies as much. Although the district court noted that it seemed quite unlikely that the detainer established custody, the court made no factual finding regarding the detainer issue and simply assumed that custody existed in order to reach the merits. Properly the district court should initially address the issue after a sufficient factual record has been made. Therefore we remand this case to the district court for a full development of the issue.

*Parole*

■ Like a detainer, parole may suffice to restrain a person so that he or she is sufficiently in custody for habeas purposes. *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963); *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180, 182 n. 3 (7th Cir.1977). The nature of the release, that it is conditional and revocable if the terms of the parole are violated, makes it sufficiently confining to qualify as custody. *See Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 300–01, 104 S.Ct. 1805, 1809, 80 L.Ed.2d 311 (1984); *Hensley v. Municipal Court,* 411 U.S. 345, 351–52, 93 S.Ct. 1571, 1575, 36 L.Ed.2d 294 (1973); *Harts v. Indiana,* 732 F.2d 95, 96 n. 1 (7th Cir.1984) (per curiam).

■ Vargas's "parole" status is important and must be carefully considered on a full record. If Vargas is found to be still on parole his habeas suit may be proper, and he is likely subject to the exclusion provisions of the United States Code. If instead it is decided his parole status has expired, the federal court is without habeas jurisdiction unless the detainer is found to be sufficiently restrictive to provide jurisdiction. If the detainer establishes jurisdiction, and he is no longer on parole, his presence in the country may subject him to the deportation provisions of the United States Code.

Here we have even less evidence than we have regarding the "detainer"; and therefore, we again are faced with a record

insufficient to decide a jurisdictional issue. The INS does tell us that Vargas's parole had been automatically extended and that it continues to this day. We have no reason to doubt the INS's assertion, nevertheless we must rest our decisions on the record and relevant legal authority and not on the representations of government attorneys. Nothing in the record substantiates that the parole was automatically extended, and likewise when pressed at oral argument the INS was unable to direct this court to any documented authority that authorized, memorialized, or otherwise reported the event. Even though Vargas may be willing to accept the INS's assertion that he is still on parole in order to establish jurisdiction, we are not moved by some notion that this constitutes a waiver. Vargas clearly argues that the record on the issue is incomplete, and if it is later documented that he is longer on parole, the nature of the immigration proceedings may change from that of exclusion to that of deportation. In such a situation Vargas would then like to make his case for relief under the deportation provisions. Obviously such a potential recharacterization is significant and too important to decide on such an incomplete record or on the basis of a tepid, partial acquiescence.

The INS next tells us that even though Vargas is released on something called parole, it really is not parole at all and certainly is not sufficiently restrictive to constitute custody for habeas purposes. Even though we are mindful that this is an immigration parole and not a criminal parole, Vargas makes a strong argument that under the immigration laws he must appear at any hearing convened by the INS and depart when asked, or face criminal sanctions, and that he is only temporarily at large pursuant to this parole. Such restrictions, similar to those found sufficiently restrictive in the criminal context, certainly suggest that Vargas has a colorable claim of jurisdiction by virtue of his parole status. Still, the record is insufficient to determine exactly what the true nature of any "parole" may have been, and so the record must be developed further on remand.

We remand this case to the district court for a full consideration of the jurisdictional issues discussed in this opinion. We offer no opinion regarding the substantive merits raised by the parties. Circuit Rule 36 shall not apply.

VACATED AND REMANDED.

# APPENDIX

U.S. Department of Justice
Immigration and Naturalization Service

Immigration Detail - Notice of Action
By Immigration and Naturalization Service

| | File No. |
|---|---|
| "PRIOR TO RELEASE FROM CUSTODY, PLEASE CONTACT U.S. IMMIGRATION AND NATURALIZATION SERVICE, CHICAGO, ILLINOIS: SUPERVISORY DETENTION AND DEPORTATION OFFICER. PHONE AREA CODE 312-353-6989." | A23 224 233 |
| | Date: November 19, 1985 |

**TO:** (Name, title and institution)

Gordon A. Abrahamson, Superintendent
Dodge Correctional Institution
P. O. Box 661
Waupun, Wisconsin 53963

**FROM:** (INS Office Address)

Ronald B. Swan, Officer in Charge
Room 186
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

| Name of Inmate |
|---|
| VARGAS, Gregorio Fernandez     145509-A |

| Month, Day and Year of Birth | Sex | Nationality |
|---|---|---|
| 12/24/51 | M | CUBA |

YOU ARE ADVISED THAT THE ACTION NOTED BELOW HAS BEEN TAKEN BY THIS SERVICE CONCERNING THE ABOVE-NAMED INMATE OF YOUR INSTITUTION:

[X] Investigation has been initiated to determine whether this person is subject to ~~deportation~~ excludable from the U.S.

[ ] An Order to Show Cause in deportation proceedings, a copy of which is attached, was served on
_____ , 19 ___

[ ] A warrant of arrest in deportation proceedings, a copy of which is attached, was served on
_____ , 19 ___

[ ] Deportation from the United States has been ordered.

IT IS REQUESTED THAT YOU: Please furnish a certified copy of the judgement and conviction for the inmate: Attempted Murder 1st Degree 940.01(1), and 939.32(1)(a)

[X] Accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments or other treatment which he would otherwise receive.

[X] Please complete and sign the bottom block of the duplicate of this form and return it to this office. [ ] A self-addressed franked envelope is enclosed for your convenience.

[X] Notify this office of the time of release at least 30 days prior to release or as much in advance as possible.

[X] Notify this office in the event of death or transfer to another institution.

_____ Ronald B. Swan

Officer in Charge
Title

Receipt acknowledged  11-27-85

Probable date of release: 10-14-98

_____ Signature

PA IV
Title

Form I-247 (Rev. 3-1-83)N

GPO 897-907