Benjamin PRIETO, Francisco Obregon–Rodriguez, Carlos A. Gonzalez, Jorge Zavala–Serra, Gustavo Moreno, Alonso Vargas, Jose L. Gomez–Parra, Jose A. Vasquez, Hernando Rueda–Gomez, Jose Valenciano–Suarez, Ramon Obando Orobio, Petitioners–Appellants,

v.

John GLUCH, United States Bureau of Prisons, United States Immigration and Naturalization Service, Respondents–Appellees.

Nos. 89–1596, 89–1599, 89–1600, 89–1605,
89–1608, 89–1611, 89–1615–89–1618,
and 89–1620.

United States Court of Appeals,
Sixth Circuit.

Argued July 26, 1990.
Decided Sept. 11, 1990.

---

* Hon. Paul V. Gadola sitting by designation from the Eastern District of Michigan.

John L. Belanger (argued), Warren, Mich., for petitioners-appellants.

L. Michael Wicks, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, Mich., Alison R. Drucker (argued) and Mark C. Walters, U.S. Dept. of Justice Civ. Div., Washington, D.C., for respondents-appellees.

Before KENNEDY and MILBURN, Circuit Judges, and WEBER, District Judge.*

KENNEDY, Circuit Judge.

Petitioners, federal prisoners, appeal a dismissal of their suit seeking a writ of habeas corpus and injunctive relief. Petitioners complain of detainer notices (detainers) lodged against them by the Immigration and Naturalization Service (INS). Respondents are John Gluch, then warden of the Federal Correctional Institution at Milan, Michigan (FCI Milan); the United States Bureau of Prisons (BOP); and the INS. Petitioners argue (1) that the District Court erred in finding that it lacked jurisdiction over their claims, and (2) that the District Court erred in finding that they had no private cause of action pursuant to 8 U.S.C. § 1252(i).

On March 22, 1988, Juan Ganem,[1] who was serving a ten-year sentence for narcotics violations at FCI Milan, filed a Petition for Writ of Habeas Corpus and Injunctive Relief with the United States District Court for the Eastern District of Michigan. Ganem alleged that on November 18, 1985, an INS detainer was sent to the prison officials. After lodging an Order to Show

---

* The Honorable Herman J. Weber, United States District Court for the Southern District of Ohio, sitting by designation.

1. Juan Ganem has been released from federal custody. Thus he was dismissed from the present case on the ground that his individual claims are now moot. A number of FCI Milan inmates who are allegedly subject to INS detainers moved for permission to join as plaintiffs in this action pursuant to Fed.R.Civ.P. 20(a). The District Court granted these inmates' motions to join because they alleged claims identical to those raised by Ganem.

Cause with the prison on March 3, 1986, the INS notified petitioner that his hearing would be held on August 6, 1986. The INS later canceled the hearing and informed Ganem that it would be held after he was released from confinement, and that the detainer would be left in place until that time. Ganem asked the District Court to "expunge or execute the detainer," arguing that its existence (1) violated his due process rights by negatively affecting his security level and therefore the conditions of his custody, and (2) contravened the duty imposed upon the Attorney General by section 1252(i), which requires that "[i]n the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of conviction." 8 U.S.C. § 1252(i).

On May 23, 1988, respondents filed an initial motion for summary judgment, arguing that petitioners had unsuccessfully litigated the same claims in a prior action in mandamus against the INS alone, and that the present action was therefore barred by *res judicata*. In *Juan Ganem–Issa v. INS*, No. 86–70424 (E.D.Mich.1986), *aff'd*, 825 F.2d 410 (6th Cir.1987), the District Court determined that "[u]nder applicable statutes and regulations, respondent need not conduct a hearing to determine whether an alien who has sustained a criminal conviction should be deported, until after the alien is released from custody." Ganem responded that his suit was not barred by *res judicata* because Congress had passed section 1252(i) since his mandamus action had been dismissed.

The District Court denied petitioners' claims. The court stated that the issues of failure to state a cognizable claim under section 1252(a) and lack of jurisdiction under section 1252(a) were resolved in the earlier *Ganem–Issa* case. The court considered petitioners' section 1252(i) claims, but found that this provision did not pro-

vide petitioners with a private cause of action.

We agree with the District Court that the issues of failure to state a cognizable claim under section 1252(a) and lack of jurisdiction were resolved in the earlier case and thus are barred by *res judicata*. We find that the District Court was without jurisdiction to reach the merits of respondents' argument that section 1252(i) does not create a private cause of action for incarcerated aliens with respect to all petitioners with the exception of Benjamin Prieto. Because the District Court had jurisdiction over Prieto, we consider the issue of whether section 1252(i) provides for a private cause of action. We find that it does not. Accordingly, we AFFIRM the judgment of the District Court insofar as the court found that the issues of (1) failure to state a cognizable claim under section 1252(a), and (2) lack of jurisdiction under section 1252(a) were resolved in the earlier case and thus are barred by *res judicata*, and that section 1252(i) does not provide Prieto with a private cause of action.

I.

█ Petitioners essentially argue that the District Court improperly found that their claims had been resolved in the earlier *Ganem–Issa* case.[2] A panel of this Court affirmed the former *Ganem–Issa* decision in which the court granted respondents' motion to dismiss, stating:

A detainer which adversely affects a prisoner's classification and eligibility for rehabilitative programs does not activate a due process right. . . .

Moreover, deportation proceedings are civil in nature, and failure to provide a speedy hearing on a deportation charge does not implicate sixth amendment rights; therefore, the petitioner has no remedy under the Interstate Agreement on Detainers of the Speedy Trial Act. . . .

Finally, 8 U.S.C. § 1252(a)[3] is inapplicable because the petitioner is not in

---

2. Petitioners do not acknowledge that the court below found these issues barred by *res judicata*, but rather assert, as they did before, that their due process rights are being violated.

3. This section provides, in pertinent part:

custody and awaiting a deportation hearing, as a result of any INS action. Rather the petitioner is incarcerated on federal drug convictions which are unrelated to his alien status.

*Ganem–Issa* (citations omitted, footnote added).

The District Court properly found that petitioners are barred from again raising these issues because they have been litigated previously.

## II.

■ Respondents contend that the District Court improperly assumed jurisdiction over petitioners.[4] Respondents argue that a deportable alien serving a criminal sentence should not be permitted to use a habeas proceeding to challenge an INS detainer because the INS does not maintain custody over deportable aliens. Respondents contend that although they argued below that jurisdiction over petitioners was lacking, the District Court, without specifically ruling on the issue, assumed jurisdiction.

The District Court stated that the issue of lack of jurisdiction was resolved in the prior litigation between the parties. The previous litigation, as noted above, resulted in a finding that section 1252(a) was inapplicable because the petitioners are not in custody as a result of INS action. Although the present case differs from the prior litigation to which the court refers in that the present litigation involves a peti-

tion for a writ of habeas corpus whereas the prior litigation involved a petition seeking a writ of mandamus, section 1252(a) is applicable only where an alien is taken into custody. Because section 1252(a) has previously been determined to be inapplicable, the District Court properly found that petitioners were barred from raising the issue.

The District Court did not discuss the issue of jurisdiction with respect to petitioners' section 1252(i)[5] claim. In order for the District Court to have jurisdiction over petitioners' habeas claims, petitioners must be in the custody of the INS. *See* 28 U.S.C. § 2241(c). Although petitioners seek injunctive relief in addition to a writ of habeas corpus, the injunctive relief they seek is an order enjoining the BOP from raising the custody classification of petitioners. Petitioners are in the custody of the BOP; thus jurisdiction with respect to the injunctive relief sought was proper. That issue, however, was properly found to be barred by *res judicata*. With respect to section 1252(i), petitioners seek habeas relief.[6] Thus we must consider whether the District Court has jurisdiction over such a habeas claim.

The District Court properly found that petitioners are not in the custody of the INS. Thus there can be no habeas jurisdiction over petitioners' claims against the INS. As the Eighth Circuit recently noted, "The writ of habeas corpus functions to grant relief from unlawful custody or imprisonment. Absent custody by the authority against whom relief is sought, juris-

Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody.... Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability.
8 U.S.C. § 1252(a).

**4.** Respondents concede that the District Court had jurisdiction over Benjamin Prieto. Prieto,

unlike the other petitioners, is not a deportable alien but rather an excludable alien who was paroled into the United States, and thus he remained in INS custody to some extent. In this opinion, the term "petitioners" denotes all petitioners with the exception of Prieto. Prieto's § 1252(i) claim is discussed separately under section III of this opinion.

**5.** This section provides, "In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of the conviction." 8 U.S.C. § 1252(i).

**6.** Petitioners request an order requiring the INS to expunge the detainer or grant a bail bond hearing.

diction usually will not lie to grant the requested writ." *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989). The petitioner in *Campillo* attempted to compel the INS, through a petition for a writ of habeas corpus, to provide an immediate hearing and disposition of deportation proceedings upon the filing of an INS detainer with the penal facility at which the alien is incarcerated. Like petitioners in the present case, Campillo was incarcerated at the time the INS filed a notice of detainer with the United States Marshal who had custody of Campillo. In finding that the District Court was without jurisdiction to consider Campillo's challenge to the INS detainer, the court stated:

> In this case, Campillo seeks relief from the consequences of a detainer filed by the INS. The detainer, however, does not purport to effect [sic] Campillo's status as a sentenced federal offender, but merely notifies prison officials that a decision regarding his deportation will be made by the INS at some future date. The filing of such a document is insufficient, we believe, to alter Campillo's status as a custodial detainee of the federal prison system. Campillo may not challenge the detainer by way of habeas corpus until he is placed in the custody of the INS, an event which will not occur until Campillo is released from his present term of confinement. The filing of an INS detainer, standing alone, does not cause a sentenced offender to come within the custody of the INS for purposes of a petition for a writ of habeas corpus.

*Id.*

The Seventh Circuit has indicated that it might reach a different result. In *Vargas v. Swan*, 854 F.2d 1028, 1032 (7th Cir.1988), the court stated that "an action that has as part of its effect the 'holding' of a prisoner for a future custodian who has evidenced an intent to retake or to decide the prisoner's future status at the end of his or her current confinement serves to establish custody for habeas purposes." The court ultimately remanded the case for a full development of the factual record so that a determination regarding the effect that the "detainer" in that case had on the petitioner could be made. *Id.* at 1033. Because *Vargas* involved an excludable alien rather than a deportable alien, the court also considered the restraining effect of the petitioner's parole status. The excludable nature of the alien distinguishes that case from the one before us because an excludable alien is arguably in INS custody to some extent. In spite of this distinction, the reasoning of the court in *Vargas* remains inconsistent with that of the Eighth Circuit in *Campillo*.

An examination of the court's reasoning in *Vargas* reveals that the reliance of the *Vargas* court on several United States Supreme Court cases in reaching its conclusion was perhaps misplaced. The Seventh Circuit noted that "[t]he Supreme Court has held that challenges to future confinement are actionable in a habeas action." *Id.* at 1031. The court cited *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973), *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488–89, 93 S.Ct. 1123, 1126–27, 35 L.Ed.2d 443 (1973), and *Peyton v. Rowe*, 391 U.S. 54, 67, 88 S.Ct. 1549, 1556, 20 L.Ed.2d 426 (1968), for this proposition. The "future confinement" involved in these cases differs from any "future confinement" of petitioners in the present case by the INS.

*Preiser* involved state prisoners whose good-time credits were canceled as a result of disciplinary proceedings. The Court found that a habeas challenge was appropriate in such an instance because the prisoners "alleged that the deprivation of their good-conduct-time credits was causing or would cause them to be in illegal physical confinement, *i.e.*, that once their conditional-release date had passed, any further detention of them in prison was unlawful; and they sought restoration of those good-time credits, which, by the time the District Court ruled on their petitions, meant their immediate release from physical custody." *Preiser*, 411 U.S. at 487, 93 S.Ct. at 1835. The Court further noted:

Even if the restoration of the respondents' credits would not have resulted in their immediate release, but only in shortening the length of their actual confinement in prison, habeas corpus would have been their appropriate remedy. For recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases.

*Id.*

In *Peyton*, the Court held that a prisoner may attack on habeas the second of two consecutive sentences while he is serving the first sentence because "a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of § 2241(c)(3)." *Peyton*, 391 U.S. at 67, 88 S.Ct. at 1556.

*Preiser* and *Peyton* differ from the case before us because although each of those cases to some extent involved future confinement, the future confinement was with the same agency or institution as the present confinement. In the case before us, petitioners request relief from the INS, which never had custody over them. Further, the INS does not have future custody over them in the sense that the prisons had future custody over the petitioners in *Preiser* and *Peyton*. The detainers in the present case merely notify the prison that an "[i]nvestigation has been initiated to determine whether this person is subject to deportation from the U.S." and ask the BOP to notify the INS at least thirty days prior to each petitioner's release. The detainer does not require the prison to "hold" the petitioner. As the Eighth Circuit stated in *Campillo*, "The detainer ... does not purport to effect [sic] Campillo's status as a sentenced federal offender, but merely notifies prison officials that a decision regarding his deportation will be made by the INS at some future date." *Campillo*, 853 F.2d at 595.

In *Braden*, the petitioner was serving a sentence in an Alabama prison when he applied to the District Court for the Western District of Kentucky for a writ of federal habeas corpus alleging a denial of his constitutional right to a speedy trial on a three-year-old Kentucky indictment. The Court found that he was entitled to raise his speedy trial claim of federal habeas corpus because he was "in custody" within the meaning of the federal habeas corpus statute. The Court's decision was based upon its opinion in *Peyton* that confinement that would be imposed in the future may constitute the custody required by the statute.

*Braden* appears more similar to the present case than *Preiser* and *Peyton* because in *Braden*, the future custody was not with the same institution as the present custody. The Court in *Braden* noted:

> [T]he "future custody" under attack will not be imposed by the same sovereign which holds the petitioner in his current confinement. Nevertheless, the considerations which were held in *Peyton* to warrant a prompt resolution of the claim also apply with full force in this context.... Since the Alabama warden acts here as the agent of the Commonwealth of Kentucky in holding the petitioner pursuant to the Kentucky detainer, we have no difficulty concluding that petitioner is "in custody" for purposes of 28 U.S.C. § 2241(c)(3).

*Braden*, 410 U.S. at 489 n. 4, 93 S.Ct. at 1126–27 n. 4 (citations omitted). As noted above, however, the warden of FCI Milan, unlike the Alabama warden in *Braden*, is not acting as the agent of the INS in holding a petitioner pursuant to the INS detainer. The detainer notice does not claim the right to take a petitioner into custody in the future nor does it ask the warden to hold a petitioner for that purpose. Thus it is not the case that the INS detainer in the present case constitutes future confinement as did the detainers involved in *Preiser, Peyton* and *Braden.*

The District Court, therefore, was without jurisdiction to reach the merits of respondents' argument that section 1252(i) does not create a private cause of action for incarcerated aliens with respect to all petitioners with the exception of Prieto.

### III.

■ Because respondents have conceded that the District Court properly had jurisdiction over Prieto's claim, we next address the issue of whether the District Court's disposition of Prieto's claim was proper. Prieto's claim seems to be a statutory cause of action based upon section 1252(i). Respondents contend that section 1252(i) does not provide him with a private cause of action.

"The question of the existence of a statutory cause of action is ... one of statutory construction." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). The court's task "is limited solely to determining whether Congress intended to create the private right of action asserted...." *Id.* The Supreme Court has set forth a four-factor test to be used in determining whether a private cause of action is implicit in a federal statute. Courts should consider: (1) whether the statute was enacted for the benefit of a special class to which plaintiff belongs; (2) whether there is any indication of legislative intent to create or deny such a remedy; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and (4) whether the cause of action is one traditionally relegated to state law in an area basically the concern of the states. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975).

This Court must first consider whether section 1252(i) was enacted for the benefit of criminal aliens. The language of the section imposes a duty on the Attorney General rather than vesting a right in criminal aliens. The Supreme Court has noted that "there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition or a command to a federal agency." *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 690–92, 99 S.Ct. 1946, 1954–55, 60 L.Ed.2d 560 (1979)). The legislative history indicates that Congress was concerned with prison overcrowding. *See* 132 Cong.Rec. H9794 (daily ed. Oct. 9, 1986) (statement of Rep. MacKay) ("[T]he local and State jails are jammed up, the Immigration and Naturalization Service has no incentive to give priority to these [sic] because the burden of inaction falls on the State and local governments and not on the Federal system."). The Senate discussed section 701 in conjunction with section 1751 of the Anti-Drug Abuse Act. The Senate's debate indicates a concern with interrupting the flow of narcotics brought into the United States by illegal aliens as well as with the overcrowding of prisons. Senator Simpson stated:

> Removal or preventing the entry of these aliens will interrupt the flow of drugs and money, and will improve the effectiveness of the system. Providing this authority to the Attorney General will give him an effective tool to be used by the INS and the Executive Office of Immigration Review for alien deportation. Not only will the Federal prison system benefit from an enhanced program to deport aliens in its custody, but even greater benefits can be anticipated at the State and local level, if the program can reach that far. It may well be that a supplemental request may be necessary to provide for additional personnel and resources to expedite these deportations. However, any such increases would be but a small fraction of the cost to provide prison and jail space for these individuals.

132 Cong.Rec. S16,908 (daily ed. Oct. 17, 1986) (statement of Sen. Simpson).

Thus the language of the statute and the legislative history both indicate that Congress did not intend to benefit criminal aliens when it enacted section 1252(i). *See also Cabezas v. Scott*, 717 F.Supp. 696, 697 (D.Ariz.1989) ("The court further concludes that ... 8 U.S.C. § 1252(i) ... was intended to address the balance of state versus federal responsibility for incarcerated aliens subject to deportation, rather than for the benefit of deportable aliens. The statute, therefore, does not provide petitioner with a private right of action.").

This Court must next consider whether Congress manifested any intent to create or deny a private cause of action to criminal aliens in the enactment of section 1252(i). The legislative history is silent on this point and the language of the statute does not indicate whether Congress intended to create or deny such a cause of action. In *Touche Ross*, 442 U.S. at 571, 99 S.Ct. at 2486, the Supreme Court cautioned that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."

The third factor that this Court must consider is whether it is consistent with the underlying purposes of the legislative scheme to imply a private cause of action in favor of the petitioner. Allowing criminal aliens to bring suit to compel the Attorney General to begin their deportation proceeding as expeditiously as possible, although perhaps not inconsistent with the purposes of controlling the flow of drugs into the United States and ameliorating the problem of overcrowded prisons, does not seem to be consistent with these purposes either. These purposes are not concerned with the rights of criminal aliens but rather with removing such aliens from the country. It would seem anomalous to permit aliens to enforce section 1252(i) when that section is not concerned with aiding such aliens.

The fourth factor to be considered is whether the concerns of federalism would make it inappropriate to imply a federal remedy. The deportation of aliens is a matter of concern to the federal government and not one traditionally relegated to state law. Thus it would not be inappropriate to imply a federal remedy. This factor alone, however, is not of such importance that it indicates that Congress intended to create a private cause of action. Neither the language of the statute nor the legislative history suggests that Congress intended to create a private cause of action for criminal aliens when it enacted section 1252(i). The Eighth Circuit has reached the same result. In *Gonzalez v. United States INS*, 867 F.2d 1108 (8th Cir.1989), the court stated:

> Applying [the *Cort v. Ash* ] standards to the present case, we conclude that 8 U.S.C. § 1252(i) imposes a duty on the Attorney General, rather than vesting a right in criminal aliens....
>
> The legislative history is silent concerning any Congressional intent to create a cause of action enabling incarcerated aliens to compel the Attorney General to expedite their deportation proceedings.... Moreover, the legislative history of the statute indicates that one of Congress's main purposes in enacting this section was to address the issue of prison overcrowding.... It would be inconsistent with this purpose to imply a private cause of action in favor of incarcerated aliens to compel an immediate deportation hearing.

*Id.* at 1109–10.

Thus we conclude that 8 U.S.C. § 1252(i) does not provide Prieto with a private cause of action. Accordingly, we AFFIRM the rulings of the District Court that the issues of (1) failure to state a cognizable claim under section 1252(a), and (2) lack of jurisdiction under section 1252(a), were resolved in an earlier case and thus are barred by *res judicata*, and that section 1252(i) does not provide Prieto with a private cause of action. These rulings dispose of all petitioners' claims. Accordingly, the judgment of the District Court is AFFIRMED.