Lazaro **GARCIA**, Petitioner–Appellant,

v.

Larry F. **TAYLOR, Warden; Immigration & Naturalization Service**, Respondents–Appellees.

No. 93–55043.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1994.

Decided Nov. 10, 1994.

Paul Hoffman, Santa Monica, CA, for petitioner-appellant.

John B. Bartos, Asst. U.S. Atty., Los Angeles, CA, for respondents-appellees.

Before: FLETCHER and FERNANDEZ, Circuit Judges, and SEDWICK, District Judge.*

FERNANDEZ, Circuit Judge:

Lazaro Garcia is a citizen of Cuba and a permanent resident of the United States. He is also a person who is serving a sentence in federal prison after having been convicted of distribution of cocaine. *See* 21 U.S.C. § 841(a)(1). That conviction makes him an aggravated felon. *See* 8 U.S.C. § 1101(a)(43); 18 U.S.C. § 924(c)(2). As an aggravated felon he is subject to the provisions of 8 U.S.C. § 1252 and is to be provided an expedited deportation hearing. *See* 8 U.S.C. § 1252a(d)(1). He brought a mandamus action in which he claimed that the Immigration & Naturalization Service was not taking steps to give him the expedited hearing that the law promised (or threatened). The district court denied relief and he appeals. We reverse and remand.

## BACKGROUND FACTS

Garcia is serving an 84-month term in federal prison on account of his narcotics trafficking offense. He has a probable release date of May 9, 1996. His crime has subjected him to the possibility of deportation. *See* 8 U.S.C. § 1252. That means that the Attorney General "shall provide for the initiation and, to the extent possible, the completion of deportation proceedings, and any administrative appeals thereof, ... before [his] release from incarceration for the underlying aggravated felony." 8 U.S.C. § 1252a(d)(1).

Because Garcia desired to have his deportability decided and to complete any necessary administrative appeals before his re-

---

* Hon. John W. Sedwick, United States District Judge for the District of Alaska, sitting by desig-    nation.

lease date, he asked that his deportation hearing start as soon as possible. He was told that would not occur and that, indeed, he would not get a hearing until a federal judge ordered one. He then brought this mandamus action against the Warden, Larry F. Taylor, and against the INS. He asked for a writ directing the prison officials and the INS to take appropriate steps to commence his hearing and to complete the administrative process within the time prescribed by Congress.

For reasons not entirely clear to us, the district court dubbed the petition as one for habeas corpus and asked for a response from the government. In that response, the government explained the program that had been designed by the Executive Office for Immigration Review, the INS, and the Bureau of Prisons. It indicated that under the program, aliens (at least some of them) were getting their hearings and that the process was being conducted in an efficient manner which minimized expenses to the participating agencies.[1] In further affidavits appended to its brief in this court, the government reiterated those points and added that about six months prior to their projected release date federal prisoners are transferred to the facility where hearings are conducted. As the government explained, the INS cannot even start proceedings until the transfer is made by the BOP, and even then the INS cannot say what the hearing date will be.

At oral argument, government counsel said that the commencement date of proceedings could be expected to be four to six months prior to the release date. It conceded that under this program if there were an administrative appeal, it would be impossible to complete that process before the release date.

We return to the chronological order of things. Garcia replied to the government's response and stated that he wanted no part of a habeas corpus proceeding; his petition, he said, was for a writ of mandamus. He again demanded that relief.

The magistrate judge then issued a Report and Recommendation in which he recognized that Garcia was petitioning for a writ of

mandamus. The magistrate judge recommended that the petition be denied because, as he indicated, there was no INS policy of refusing to hold hearings before the release date. The district court agreed, and this appeal ensued.

## JURISDICTION

As an initial matter, we must decide what kind of proceeding was commenced by Garcia. Although there was some misdirection at the district court level, the simple fact is that Garcia did not seek habeas corpus. The district court ultimately recognized that. Garcia sought mandamus and his case must stand or fall on that basis.

■ In general, the district court had jurisdiction pursuant to 28 U.S.C. § 1361. But, says the government, there cannot be jurisdiction in this case because Garcia does not have standing. That is an issue that has been debated at length. However, it is now settled. We have already said that prisoner aliens who seek mandamus to force the INS to start deportation proceedings do have standing. *See Silveyra v. Moschorak,* 989 F.2d 1012, 1014 & n. 1, 1015 (9th Cir.1993) (per curiam). That applies to Garcia.

Therefore, there can be no doubt that we do have jurisdiction.

## STANDARD OF REVIEW

As we said in *Fallini v. Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986) (citations omitted):

The extraordinary remedy of mandamus traditionally lies within the trial court's discretion. A trial court abuses its discretion when its decision is based on clearly erroneous factual findings or an incorrect legal standard.

Whether each element of the three-part mandamus test is satisfied is a question of law. We review *de novo.*

## DISCUSSION

Therefore, we will consider Garcia's claim that the government has failed to conduct

---

1. The government did note that the EOIR should be joined as an indispensable party because the

INS simply cannot control the timing of the hearing all by itself.

deportation proceedings in a timely fashion.[2]

■ As we recently said, "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994) (citations omitted).

■ (1) *Garcia's Claim.* We think there can be little doubt that Garcia's claim is clear and certain. He claims that the government—he joined only the BOP and the INS—has the obligation to follow the terms of 8 U.S.C. § 1252a(d)(1). We have no doubt that the government does have that duty, and, as we have already pointed out, there is no doubt that Garcia can seek to enforce adherence to that duty. *See Silveyra*, 989 F.2d at 1014 & n. 1, 1015.

(2) *The Ministerial Duty.* In holding against Garcia, the district court simply noted that he was not yet scheduled for actual release—the probable release date was three years away. Thus, it said, there was still time to commence and complete proceedings before the release date came, so Garcia was not entitled to relief. With all due respect, we believe that misstates the inquiry. The proper inquiry is whether the government has any intention of attempting to complete the administrative process before Garcia's release date. Let there be all the time in the world, if the government has expressed an intention to proceed in a manner that will violate the statute, mandamus may lie.

The government said, and says, that it has no such intention. It points to the fact that at least some prisoners are able to have their proceedings completed in a timely fashion. Having said that, it believes it has said enough. At first blush, that position has merit because we confronted and passed upon that kind of contention in *Silveyra*. In that case, we determined that no relief was possible. As we said:

Silveyra admits, however, that INS has a policy of conducting deportation hearings for at least some incarcerated aliens before

the expiration of their prison terms. Silveyra alleges only that INS breached its discretionary duty to begin proceedings "as expeditiously as possible" by failing to initiate deportation proceedings in his particular case.

989 F.2d at 1015. That sounds dispositive of the case at hand, for it must be admitted that "at least some incarcerated aliens" complete the process in a timely fashion. But in *Silveyra* we did not stop with that observation. We went on to state:

Mandamus may not be used to instruct an official how to exercise discretion unless that official has ignored or violated "statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised." Because Silveyra does not claim either that INS violated applicable standards in his case, or that INS's policy is so inadequate as to be beyond the limits of INS's discretion, Silveyra has no claim under the Mandamus and Venue Act.

*Id.* (citations omitted).

The difficulty is deciding whether *those* statements apply to this case. We think they do not. Garcia *does* claim that the policy in question here is "so inadequate as to be beyond the limits of INS's discretion," and that the statutory standards have been ignored. Could there be merit in those claims? We think there could be. To explain why, we must return to the statute in question.

That statute directs that the Attorney General "shall provide for the initiation ... of deportation proceedings" before the release date. *See* 8 U.S.C. § 1252a(d)(1). There can be no doubt that the government has complied with that directive. Were that all, this case would be at an end.

However, the statute also directs that the Attorney General "shall provide for ... the completion of deportation proceedings and any administrative appeals thereof" before the release date "to the extent possible." *Id.* There can be no doubt that the program adopted by the government makes it impossible to complete the administrative appeals process before the release date. When the

---

**2.** We will not give detailed consideration to his assertion that his hearings *must* be conducted in

Los Angeles. That is plainly within the Attorney General's discretion.

government refuses to commence proceedings any earlier than four to six months before the release date, it is a foregone conclusion that the administrative appeals process cannot be completed in a timely fashion. It may be the case that truly contested proceedings before the IJ are also beyond the possibility of completion, but we cannot be sure of that on the present record.

That appears to be a deliberate ignoring of the legislative mandate and suggests that the government policy "is so inadequate as to be beyond the limits of ... discretion." *Silveyra*, 989 F.2d at 1015. The government, however, points out that completion has an element of discretion in it because Congress has said that it must only complete the process "to the extent possible." Certainly there is an element of discretion, but that does not mean that the limits of that discretion cannot be exceeded.

On the face of this record, it would seem that adopting a program which makes it impossible to deliver the process that the statute commands is not delivering that process to the extent possible. Of course, we recognize that it might not be possible to deliver the process demanded by this statute. If not, then the impossible is, indeed, the extent possible. But the government has not shown that to be true. It has said that its system is designed to maximize the number of aliens who can have "hearings completed" by the end of their incarceration [3] and that the system is efficient and minimally expensive. But that is far from demonstrating that a system which provides for completion of appeals at, perhaps, a greater expense or, perhaps, somewhat less efficiency is not possible.

(3) *Another Adequate Remedy?* We do not perceive another remedy which would be adequate to solve Garcia's difficulty. Certainly the government says there is none. We have previously decided that there can be no Administrative Procedure Act remedy. *See Silveyra*, 989 F.2d at 1015. We have also declared that there is no private right of action. *See Urbina–Mauricio v. INS*, 989 F.2d 1085, 1088 (9th Cir.1993).

The other possibility that comes to mind is habeas corpus. We must determine whether that remedy is available to Garcia. Deciding that issue leads us into the arcane area of the nature and effect of INS detainers, which are issued before there is a warrant or an order to show cause directed to the alien. The detainer letter itself merely advises that an investigation has been commenced and that an order to show cause and warrant will be issued when available. It also indicates that it is only a notice and that it does not limit BOP discretion. Finally, it requests notice of the release time at least thirty days prior to release.

Some circuits have held that a detainer does not place a person in custody for habeas corpus purposes. *See Orozco v. INS*, 911 F.2d 539, 541 (11th Cir.1990) (per curiam); *Prieto v. Gluch*, 913 F.2d 1159, 1162–66 (6th Cir.1990), *cert. denied*, 498 U.S. 1092, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991); *Campillo v. Sullivan*, 853 F.2d 593, 595–96 (8th Cir. 1988), *cert. denied*, 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989). One circuit has pronounced itself unsure and has remanded for a determination of just what the effect of the detainer is. *See Vargas v. Swan*, 854 F.2d 1028, 1032–33 (7th Cir.1988). Another circuit has simply recognized the issue. *See Roldan v. Racette*, 984 F.2d 85, 88–89 (2d Cir.1993). We have not yet spoken. *Cf. Guti v. INS*, 908 F.2d 495, 496 (9th Cir.1990) (per curiam); *Chung Young Chew v. Boyd*, 309 F.2d 857, 865 (9th Cir.1962).

■ We *have* said that a detainer plus a warrant does constitute a form of custody. *See Chung Young Chew*, 309 F.2d at 865. We have also indicated that a claim that a detainer letter is sufficient to place a person in custody is not frivolous. *See Guti*, 908 F.2d at 496. We now agree with the circuits which have expressed the opinion that the bare detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available.

---

**3.** It is interesting to note that at oral argument the very knowledgeable government counsel was not able to even approximate what percentage of the deportable aliens incarcerated in the federal system that was.

As the Eighth Circuit said in *Campillo,* a case where the INS merely gave the kind of notice that it gave here:

> The detainer, however, does not purport to effect Campillo's status as a sentenced federal offender, but merely notifies prison officials that a decision regarding his deportation will be made by the INS at some future date. The filing of such a document is insufficient, we believe, to alter Campillo's status as a custodial detainee of the federal prison system.

853 F.2d at 595. The Sixth Circuit has elaborated on this discussion. In *Prieto* it opined:

> The detainer notice does not claim the right to take a petitioner into custody in the future nor does it ask the warden to hold a petitioner for that purpose. Thus it is not the case that the INS detainer in the present case constitutes future confinement....

913 F.2d at 1164. The court was well aware of *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 488–89, 93 S.Ct. 1123, 1126, 35 L.Ed.2d 443 (1973). However, as it pointed out, in that case the warden in the state where the person was imprisoned acted as an agent of the requesting state because he held the defendant for the requesting state. *Id.* That is not the case where an INS detainer is involved because the BOP warden does not *hold* the prisoner for the INS.

We do not see how the detainer document can be read in any other way. It simply expresses interest and says that the INS will (we suppose, if it honestly can) obtain charging documents in due course. We see nothing in the detainer letter that would allow, much less compel, the warden to do anything but release Garcia at the end of his term of imprisonment for the aggravated felony. Thus, habeas corpus is not an available remedy at this time.

Should the INS wait to take action to commence proceedings until four to six months before the release date, habeas corpus may well then be available. However, it would promise a Pyrrhic victory at best. By then, the relief sought by Garcia—start a proceeding that can be completed before the release date—would be impossible of realization.

Therefore, we hold that Garcia has also satisfied the third element of our three-part mandamus test.

### CONCLUSION

Because the district court was of the opinion that the mere existence of discretion regarding the commencement of proceedings led to the ineluctable conclusion that mandamus could not lie, it failed to fully explore the issues surrounding the government's program. It, thus, acted upon an insufficient record. That record must now be fleshed out so that the district court can determine whether the government is complying with the legislative command that it, "to the extent possible," complete "the deportation proceedings and any administrative appeals thereof" before the release date. 8 U.S.C. § 1252a(d)(1).

We are mindful of the assertion that an indispensable party is missing from these proceedings because the EOIR must also cooperate. The district court can consider that issue in due course. We do observe, however, that the duties under the statute are imposed upon the Attorney General and that the INS, the EOIR and the BOP are all part of her department. We, therefore, doubt that an attempt to bring the needed parties before the court will prove to be an insuperable problem.

**REVERSED and REMANDED.**