Juan Reinaldo **CAMPILLO**, Appellee,

v.

John **SULLIVAN**, Appellant.

Victor R. **CORPORAN**, Appellant,

v.

John **SULLIVAN**, Warden, Appellee.

Nos. 87–5335, 87–5490.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1988.

Decided Aug. 4, 1988.

Alison R. Drucker, Washington, D.C., and Fay Nosow, Minneapolis, Minn., for appellant.

Cecilia M. Michel, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and DUMBAULD *, District Judge.

BEAM, Circuit Judge.

This appeal involves whether incarcerated aliens may compel the Immigration and Naturalization Service (INS), through a petition for writ of habeas corpus, to provide an immediate hearing and disposition of deportation proceedings upon the filing of an INS detainer with the penal facility at which the alien is incarcerated. We find that incarcerated aliens may not maintain such actions, and order that the petitions be dismissed.

* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western

## BACKGROUND

Juan Reinaldo Campillo, a Marielto Cuban, is presently serving a fifteen year sentence for violations of various narcotics laws. Campillo entered the United States at Miami, Florida, as one of approximately 125,000 Cuban nationals who came to the United States in the spring and summer of 1980 as part of the "Mariel Freedom Flotilla." Campillo lacked the proper documentation entitling him to legally enter the United States, and has, since entering the country, remained excludable from the United States pursuant to 8 U.S.C. § 1182(a)(20).

Following Campillo's arrest, the INS filed an "Immigration Detainer—Notice of Action By Immigration and Naturalization Service" form with the United States Marshal who had custody of Campillo at the time. The detainer was issued "for notification purposes only," and advised that an investigation had been initiated to determine whether Campillo was subject to exclusion or deportation from the United States. It requested that the INS be notified within thirty days of Campillo's release, so that appropriate action could be taken. The detainer neither initiated formal deportation proceedings against Campillo nor did it purport to affect his classification as a federal prisoner. Upon Campillo's conviction and sentence, he was transported to the Sandstone Federal Correctional Institution, Sandstone, Minnesota, where the detainer was received and acknowledged by prison officials.

In December of 1986, Campillo filed a petition for a writ of habeas corpus in the United States District Court for the District of Minnesota, alleging that his security and custody classification had been adversely affected by the detainer. He requested that an immediate hearing and determination be conducted regarding his deportation, or alternatively, that the detainer be expunged. The district court concluded that the INS had failed to perform its statutory duty to begin deportation pro-

District of Pennsylvania, sitting by designation.

ceedings "as expeditiously as possible after the date of conviction," 8 U.S.C. § 1252(i), and to conduct such proceedings with such "reasonable dispatch as may be warranted by the particular facts and circumstances," 8 U.S.C. § 1252(a). Accordingly, the court granted the petition and ordered that the detainer be expunged, unless the INS initiated a deportation investigation and subsequent proceedings as necessary within two months.[1]

On appeal, the government argues that the district court was without jurisdiction to consider Campillo's challenge to the INS detainer. We agree.

DISCUSSION

Campillo sets forth two statutory grounds for federal jurisdiction of his claim: the general habeas corpus statute found at 28 U.S.C. § 2241 and the more specific statute involving deportation proceedings found at 8 U.S.C. § 1252. Under either statute, Campillo's claim fails because he is not yet in the custody of the INS.

▮▮▮ The writ of habeas corpus functions to grant relief from unlawful custody or imprisonment. Absent custody by the authority against whom relief is sought, jurisdiction usually will not lie to grant the requested writ. *See* 28 U.S.C. § 2241(c). *See generally* 39 C.J.S. *Habeas Corpus* §§ 6–7 (1976); *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir.1976) (habeas corpus may not be used to adjudicate matters "foreign to the question of the legality of custody."). In this case, Campillo seeks relief from the consequences of a detainer filed by the INS. The detainer, however, does not purport to effect Campillo's status as a sentenced federal offender, but merely notifies prison officials that a decision regarding his deportation will be made by the INS at some future date. The filing of such a document is insufficient, we believe, to alter Campillo's status as a custodial detainee of the federal prison system. Campillo may not challenge the detainer by way of habeas corpus until he is placed in the custody of the INS, an event which will not occur until Campillo is released from his present term of confinement. The filing of an INS detainer, standing alone, does not cause a sentenced offender to come within the custody of the INS for purposes of a petition for a writ of habeas corpus. *See Fernandez–Collado v. I.N.S.*, 644 F.Supp. 741, 742–44 (D.Conn.1986).[2]

---

1. The case consolidated with Campillo's for this appeal presents similar facts. Victor R. Corporan, a native and citizen of the Dominican Republic who emigrated to the United States as a permanent resident alien in 1973, was convicted of several drug-related offenses in March of 1986. A similar detainer was filed with corrections officials while Corporan was serving his term of incarceration, and Corporan filed a petition for a writ of habeas corpus seeking execution or expungement. In Corporan's case, the district court denied relief on the petition, and Corporan appealed. During the pendency of the appeal, Corporan served the remainder of his sentence and was released from federal custody. The court was informed at oral argument that Corporan is currently on INS parole and is awaiting his deportation hearing. The court believes that because the relief requested in Corporan's petition can no longer be granted, the case has been rendered moot and should be dismissed. We note, however, that the analysis used to resolve the issues raised in Campillo's action would apply with similar force to Corporan's situation, had the case not been made moot by virtue of his release.

2. We believe a strong analogy can be drawn to the facts of *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). In *Moody*, the Supreme Court held that a federal parolee imprisoned for a crime committed while on parole is not entitled to a prompt parole revocation hearing upon the filing of a parole violator warrant with the institution of his confinement. *Id.* at 86, 97 S.Ct. at 278. The warrant, which was not served upon the defendant but merely filed with the prison, was treated by prison officials as an administrative detainer. It served to notify the prison of the pending parole revocation proceedings, and to assure that the inmate would not be released from custody until the parole violation was acted upon.

In reaching its conclusion, the Court said that the inmate's present confinement did not derive "in any sense from the outstanding parole violator warrant, * * *" but resulted from his conviction for the crime committed while on parole. *Id.* "Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. * * * [W]e cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which *Morrisey* [*v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972) ] sought to protect. * * * [L]oss of liberty as a parole violator does not occur

Campillo argues, in this regard, that he is in the "technical custody" of the INS and, therefore, has satisfied the custody requirement of the habeas statutes. There have been cases which have applied a theory of technical custody. *See Chung Young Chew v. Boyd*, 309 F.2d 857, 865 (9th Cir. 1962); *Slavik v. Miller*, 89 F.Supp. 575, 576 (W.D.Pa.), *aff'd*, 184 F.2d 575 (3d Cir.1950), *cert. denied*, 340 U.S. 955, 71 S.Ct. 566, 95 L.Ed. 688 (1951). In both *Boyd* and *Slavik*, however, the Commissioner or District Director of the INS was a party and the INS had completed deportation proceedings and issued a determination of deportability and a formal deportation order. *Boyd*, 309 F.2d at 859; *Slavik*, 89 F.Supp. at 576. *See Fernandez–Collado*, 644 F.Supp. at 743. These courts acted to ensure that an already existing deportation order would be subject to judicial review. Here, on the other hand, there is no existing deportation order, nor is there a threat that such an order will be issued without the opportunity for a full and fair hearing prior to deportation. We do not believe that the filing of a detainer with prison officials amounts to the taking into custody, technical or otherwise, of the petitioner.

We note further, with regard to Campillo's claim under 8 U.S.C. § 1252(a), that the specific language of the statute supports this result.[3] Section 1252(a) provides a cause of action to review a "determination" of the Attorney General (i.e., the INS) regarding whether to retain an alien in custody, release the alien on bail, or release the alien on conditional parole following his or her arrest upon a properly issued warrant. It is only after the alien is taken into INS custody that the provisions for judicial relief contained in section 1252(a) become available. Here, the INS has not yet taken the initial step of gaining custody of Campillo. Rather, the INS has issued a detainer to the authority who currently has custody of Campillo, informing it of the INS' intent to investigate Campillo's status. Section 1252(a), by its terms, is not yet available as a remedy under the circumstances of this case. *See Fernandez–Collado*, 644 F.Supp. at 743–44.

Petitioner relies on an alleged violation of 8 U.S.C. § 1252(i), which provides that the Attorney General shall begin deportation proceedings "as expeditiously as possible," as the underlying basis for relief in his habeas petition. Because we find that the district court was without jurisdiction to consider petitioner's claim, we need not address whether section 1252(i) compels the INS to provide an immediate deportation hearing under the facts of this case.[4] It is

until the parolee is taken into custody under the warrant." *Id.* at 86–87, 97 S.Ct. at 278.

In the same way, the issuance of an INS deportation detainer imposes no significant and current limitation upon an inmate's liberty. Notwithstanding the detainer, the inmate remains in the custody of the institution in which he or she is confined.

3. Section 1252(a) provides, in relevant part, as follows:

Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. * * * Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General

concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability.

8 U.S.C. § 1252(a).

4. In his brief, petitioner spends a great deal of time discussing whether section 1252(i) is enforceable through an implied private right of action. *See Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (setting forth factors to be used in determining whether a statute affords individual plaintiffs an implied private right of action). Such a discussion is out of place in this case, where petitioner is attempting to compel compliance with the statute through a petition for a writ of habeas corpus. Nevertheless, we note that an examination of the statute and its legislative history reveals that it was intended more as a directive to the INS rather than as a vehicle for incarcerated aliens to demand immediate deportation hearings. *See*

sufficient for us to hold that Campillo may not seek compliance with section 1252(i) through a petition for a writ of habeas corpus under the circumstances presented here.

CONCLUSION

The decision of the district court granting relief in *Campillo* is reversed and the case remanded to the district court with instructions to dismiss for lack of jurisdiction. The appeal in *Corporan* is dismissed as moot.

*Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981) (a private remedy should not be inferred where a statute is framed as a "general prohibition or command to a federal agency.").