**Arnold TOPAZOV, Plaintiff,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

**Civil Action No. 95–1349 (PLF).**

United States District Court, District of Columbia.

June 28, 1996.

**480**

Arnold Topazov, pro se.

Rudolph Contreras, Assistant United States Attorney, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

Arnold Topazov is a citizen of the former Soviet Union and is currently incarcerated in the Federal Correctional Institution in Allenwood, Pennsylvania. He brings this action for declaratory and injunctive relief to remove an Immigration and Naturalization Service ("INS") detainer that has been lodged against him and to stop any deportation proceedings that may follow pursuant to the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1101 *et seq.* The INS moves to dismiss his claim for lack of subject matter and personal jurisdiction.

## I. FACTS

Mr. Topazov is an ex-Soviet army officer who defected to the United States and received political asylum in August 1979. He remained in the United States for four successive six-month parole periods through April 1981. Def.'s Motion at 2. On April 15, 1981, he was granted permanent resident alien status pursuant to Section 7 of the Central Intelligence Act of 1949, 50 U.S.C. § 403h, which provides for the entry of aliens into the United States for permanent residence when such entry "is in the interest of national security or essential to the furtherance of the national intelligence mission." Def.'s Ex. 3, Mem. of Creation of Lawful Permanent Residence.[1]

On March 7, 1985, Mr. Topazov was convicted of kidnaping and hostage taking during the commission of a bank robbery and aiding and abetting, in violation of 18 U.S.C. §§ 2, 2113(e), and was sentenced to life imprisonment. Def.'s Ex. 1, Judgment and Probation/Commitment Order. The sentence was later reduced to twenty years. Def.'s Ex. 2. On April 15, 1992, the INS issued a detainer notifying the Bureau of Prisons that an inquiry had been initiated to determine whether Mr. Topazov was subject to deportation and requesting his transfer to the Federal Correctional Institution in Oakdale, Louisiana, six months prior to his release. Pl.'s Ex. 1, Detainer.[2] This action was based on Section 241 of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(i), which classifies aliens who are convicted of crimes of moral turpitude within five years of admission to the United States as "deportable." [3] Mr. Topazov filed a

1. Section 7 of the CIA Act provides in relevant part:

> Whenever the Director [of the CIA], the Attorney General, and the Commissioner of Immigration and Naturalization shall determine that the entry of a particular alien into the United States for permanent residence is in the interest of national security or essential to the furtherance of the national intelligence mission, such alien and his immediate family shall be given entry into the United States for permanent residence without regard to their inadmissibility under the immigration or any other laws and regulations, or to the failure to comply with such laws and regulations pertaining to admissibility....

50 U.S.C. § 403h.

2. So far as the record reflects, no such transfer has yet occurred.

3. The Attorney General has the authority under Section 241 to order the deportation of members of various classes of "deportable aliens," including those who are "convicted of a crime involving moral turpitude committed within five years ... after the date of entry, and ... sentenced to confinement ... for one year or longer...." 8 U.S.C. § 1251(a)(2)(A)(i)(I)–(II).

request that the detainer be removed, but the INS did not respond. Compl. ¶¶ 9–14 and Ex. 2.

Mr. Topazov asserts that his entry into the United States under the CIA Act precludes his deportation under the INA. Compl. ¶ 17. He alleges that submission to any forthcoming deportation proceedings will cause him injury due to the potential debilitating effect of a cross-country transfer after a chronic ailment and the additional incarceration after his criminal release date that he believes will be required for the administrative adjudication and appeals. Pl.'s Opp. at 9–10.[4] Mr. Topazov requests this Court (1) to declare that any potential outcome of the INS deportation proceedings will have no effect on his resident status; (2) to order the INS to remove its detainer and issue a memorandum stating that it will not deport him upon his release from prison; and (3) to declare that his deportation proceedings would jeopardize the national security of the United States.

## II. JURISDICTION

Mr. Topazov claims that this Court has jurisdiction over his case under the Declaratory Judgment Act, 28 U.S.C. § 2201. The INS asserts that this Court lacks jurisdiction because of the exclusivity and exhaustion provisions of Section 106 of the INA, 8 U.S.C. § 1105a(a)–(c), and, alternatively, that this action is a habeas corpus action relating to the fact or duration of incarceration over which this Court lacks jurisdiction because plaintiff is not in the custody of the INS and because such actions must be brought in the district of confinement.

### A. Exclusivity and Exhaustion Under Section 106

■ Judicial review of deportation decisions is authorized by Section 106 of the INA, which provides that an order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as

of right under the immigration laws and regulations. 8 U.S.C. § 1105a(c). Exclusive jurisdiction to review final orders of deportation rests in the courts of appeals, not in the district courts. 8 U.S.C. § 1105a(a); see *Foti v. INS*, 375 U.S. 217, 223, 84 S.Ct. 306, 310–11, 11 L.Ed.2d 281 (1963); *Ayuda, Inc. v. Thornburgh*, 880 F.2d 1325, 1335 (D.C.Cir. 1989) ("*Ayuda I*"), vacated on other grounds, 498 U.S. 1117, 111 S.Ct. 1068, 112 L.Ed.2d 1174 (1991).

This challenged INS action is not a deportation order *per se* but the lodging of a detainer. It is nevertheless sufficiently a part of the statutory scheme of deportation proceedings to implicate the exclusivity and exhaustion provisions of Section 106. The Supreme Court has defined the reach of Section 106 to "include[ ] all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the [deportation] hearing." *INS v. Chadha*, 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983). This broad interpretation effects "[t]he fundamental purpose behind § 106(a) [which] was to abbreviate the process of judicial review of deportation orders in order to frustrate certain practices ... whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts." *Foti v. INS*, 375 U.S. at 224, 84 S.Ct. at 311. In *Foti*, the Court decided that Section 106 provides exclusive jurisdiction to the courts of appeals for denials of motions to suspend deportation orders because those motions are considered by the immigration judge "antecedent to and [as] a constituent part of the 'final order of deportation.'" *Id.* at 226, 84 S.Ct. at 312. The Court observed that a "bifurcated procedure," whereby an alien could seek direct review of such denials of discretionary relief in the district court, and later seek review of a deportation decision in a court of appeals pursuant to Section 106, would frustrate the legislative intent to expedite deportation proceedings. *Id.* at 226–28, 84 S.Ct. at 312–13.[5]

---

4. Deportation proceedings are governed by Sections 242 through 242B of the INA, 8 U.S.C. §§ 1252–1252b.

5. While plaintiff invokes a number of cases in which district courts have exercised jurisdiction

in exceptional circumstances, none of those cases involved situations similar to the one presented here.

■ Mr. Topazov maintains that his claim is not subject to the exclusivity and exhaustion provisions of Section 106 because it is a challenge not to his deportation itself, should it occur, but rather to the validity of the detainer and to the INS's authority to conduct a deportation hearing against him at all. Compl. ¶ 17. Mr. Topazov asserts that his entry into the United States under the authority of the CIA Act exempts him from deportation and that the administrative process established by Sections 242 through 242B and the jurisdictional provisions of Section 106 of the INA simply do not apply to his case.[6]

■ As to the first point, it is established that the INS has the authority to issue a detainer when there is "reason to believe [an alien] is amenable to exclusion or deportation proceedings under any provision of law." 8 C.F.R. § 242.2(a)(1).[7] The decision to issue a detainer, like the decision to suspend a deportation order or to reopen a deportation proceeding, is "governed by the regulations applicable to the deportation proceeding itself," *Cheng Fan Kwok v. INS*, 392 U.S. 206, 217, 88 S.Ct. 1970, 1977, 20 L.Ed.2d 1037 (1968), and is made "as an integral part of the proceedings which [lead] to the issuance of a final deportation order." *Foti v. INS*, 375 U.S. at 223, 84 S.Ct. at 310. Because a district court challenge to a detainer would involve the very "bifurcated procedure" that the Supreme Court disapproved in *Foti*, 375 U.S. at 226–27, 84 S.Ct. at 312, the issuance of a detainer is governed by Section 106 and must be contested during the deportation proceedings themselves.

■ As to the second point, the Ninth Circuit has addressed the question of whether a plaintiff may escape the exclusivity and exhaustion requirements of Section 106 to resolve a question of statutory interpretation which, if decided in that plaintiff's favor, would preclude deportation proceedings under the INA. *See Wang Zong Xiao v. Barr*, 979 F.2d 151 (9th Cir.1992). Mr. Wang was a Chinese national paroled into the United States as a witness in a federal narcotics trial. *Id.* at 152. At the conclusion of the trial, the INS notified Mr. Wang that it was instituting exclusion proceedings to return him to China. *Id.* at 153. Alleging that the INS was "without legal authority over [his] person," Mr. Wang obtained a preliminary injunction that barred the government from conducting exclusion proceedings against him on the ground that the INA does not grant the INS authority over aliens who have entered the country against their will. *Id.* at 153, 155.

The Ninth Circuit vacated the injunction, declaring that the district court lacked jurisdiction because Mr. Wang had not exhausted his administrative remedies as required by Section 106. *Wang Zong Xiao v. Barr*, 979 F.2d at 155. Deferring to "the congressional intent of locating alien status disputes in administrative agencies and not the federal courts," and recognizing that either an immigration judge or the Board of Immigration Appeals could potentially decide that Mr. Wang's mode of entry precluded jurisdiction and dismiss his case, the court concluded that "the question of jurisdiction must first be litigated in the exclusion proceedings themselves." *Id.* at 154–55 (quoting *Loya v. INS*, 583 F.2d 1110, 1114 (9th Cir.1979)); *see also Ayuda, Inc. v. Reno*, 7 F.3d 246, 249 n. 8 (D.C.Cir.1993) (*"Ayuda III"*), cert. denied, — U.S. —, 115 S.Ct. 70, 130 L.Ed.2d 26 (1994).

Like the plaintiff in *Wang Zong Xiao*, Mr. Topazov primarily raises a question of statutory interpretation, namely the primacy of the CIA Act over the INA, and not a constitutional claim or the inherent unfairness of the administrative scheme itself. *Cf. Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1032–33 (5th Cir.1982). The immigration judge has the authority to determine the extent of his or her own jurisdiction by interpreting the immigration statutes. *Wang Zong Xiao v. Barr*, 979 F.2d at 155. If and when the INS initiates his deportation hearing, Mr. Topazov will have the opportunity to

---

**6.** Mr. Topazov concedes that he otherwise meets the "deportability" classification of Section 241, 8 U.S.C. § 1251(a)(2)(A)(i). Pl.'s Opp. at 23.

**7.** 8 C.F.R. pt. 242 was promulgated under the authority of Sections 242 through 242B of the INA, 8 U.S.C. §§ 1252–1252b.

litigate his jurisdictional and statutory claims before an immigration judge with the benefit of notice, representation by counsel, cross-examination of witnesses, and the presentation of evidence and witnesses on his own behalf. 8 U.S.C. § 1252(b)(1)–(4); 8 C.F.R. pt. 242. In the event of an adverse ruling, administrative review will be available in the Board of Immigration Appeals pursuant to 8 C.F.R. § 242.21 and judicial review may be had in a United States Court of Appeals pursuant to 8 U.S.C. § 1105a.

### B. The Deportation Proceeding and National Security

■ Mr. Topazov's request for a declaration that his deportation proceedings would jeopardize the national security of the United States is also not properly before this Court. The CIA Act by its terms vests discretion in the "Director [of the CIA], the Attorney General, and the Commissioner of Immigration and Nationalization" to determine whether the permanent residence of a particular alien is "in the interest of national security or essential to the furtherance of the national intelligence mission" at the time of admission. 50 U.S.C. § 403h. The Act does not expressly address the mechanism, if any, to reverse or revoke such a determination. While it is unlikely that once admitted under this statute (or any other) an alien is rendered immune from deportation, the Court need not address whether the INA provides the procedures governing the decision whether to deport; the INS has the authority to address the matter in the first instance.[8] Mr. Topazov therefore must exhaust his remedies with that agency before seeking relief in the federal courts. *See Wang Zong Xiao v. Barr,* 979 F.2d at 155.

### C. Habeas Corpus

■ As an alternative basis for dismissal, the INS asserts that Mr. Topazov's action is actually in the nature of a petition for a writ of habeas corpus to which he is not entitled.[9] The INS is correct that the fact that plaintiff is in custody and the relief he seeks relates to the duration and place of confinement does not, by itself, entitle him to relief against the INS or in this Court. Although the INS lodged a detainer against Mr. Topazov, "the lodging of a detainer, without more, is insufficient to render the alien in custody." *Galaviz–Medina v. Wooten,* 27 F.3d 487, 493 (10th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995); *see Orozco v. INS,* 911 F.2d 539, 541 (11th Cir. 1990); *Prieto v. Gluch,* 913 F.2d 1159, 1162–64 (6th Cir.1990); *Campillo v. Sullivan,* 853 F.2d 593, 595 (8th Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989). Mr. Topazov's liberty is restrained by virtue of his criminal conviction and sentence, not by virtue of the detainer. Accordingly, he is not in the INS's custody pursuant to "an order of deportation [entitling him to] judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10). Moreover, the fact that the detainer requests that he be transferred six months prior to the expiration of his criminal sentence does not independently entitle him to relief because he "has no justifiable expectation that he will be incarcerated in any particular [institution]," or that he will never be transferred. *Olim v. Wakinekona,* 461 U.S. 238, 245–46, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983). Finally, plaintiff must pursue whatever habeas corpus relief he seeks against his actual custodian in the district of his confinement. *See LoBue v. Christopher,* 82 F.3d 1081, 1082 (D.C.Cir. 1996); *Chatman–Bey v. Thornburgh,* 864

---

**8.** The legislative history of Section 7 of the CIA Act states in relevant part:

In order to eliminate any question which might arise as to the authority of the Attorney General to deport such persons who might at a later date prove undesirable, words "pertaining to admissibility" are inserted after the word "regulations," as it appears in this section. This assures that the only provisions of law affected by this section are those regarding the admissibility of aliens. It does not apply to any provisions of law regarding the conduct of

such individuals once they have gained entry into the United States.

S.Rep. No. 106, 81st Cong., 1st Sess. 2 (1949), *reprinted in* 1949 U.S.C.C.S. 1395, 1398–99. Thus, it appears more than likely that the CIA Act governs only an individual's admission into the United States; it does not prevent that individual's deportation under INS statutes and regulations.

**9.** Mr. Topazov disclaims any effort to petition for habeas corpus, Pl.'s Opp. at 2, 5.

F.2d 804, 813 (D.C.Cir.1988). For all these reasons, plaintiff is not entitled to a writ of habeas corpus.

### III.  CONCLUSION

Because the Immigration and Nationality Act requires Mr. Topazov to exhaust his administrative remedies and then to appeal a deportation order to a United States Court of Appeals, this Court lacks jurisdiction over his request for declaratory and injunctive relief. Furthermore, this Court does not have jurisdiction under an alternative theory of habeas corpus. Accordingly, it is hereby

ORDERED that the motion of the Immigration and Naturalization Service to dismiss for lack of subject matter and personal jurisdiction is GRANTED; and it is

FURTHER ORDERED that this case is DISMISSED and is removed from the docket of the Court.

SO ORDERED.