Cyril Nathaniel KENDALL, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, U.S. Department of Justice, Respondents.

No. 02 Civ. 9590(RWS).

United States District Court, S.D. New York.

May 1, 2003.

John J. Garzon, Sunnyside, NY, for Petitioner.

Honorable James B. Comey, United States Attorney for the Southern District of New York, New York, NY (Michael R. Holden, Assistant U.S. Attorney, of counsel).

## OPINION

SWEET, District Judge.

The respondents Immigration & Naturalization Service ("INS") and U.S. Department of Justice ("DOJ") (collectively, the "Government") have moved pursuant to Rule 12(b)1, Fed. R. Civ.P., to dismiss the application of Cyril Nathaniel Kendall ("Kendall" or "Petitioner") for a writ of habeas corpus on the grounds of jurisdic- tion. For the reasons set forth below, the motion is granted.

### Prior Proceedings

Kendall filed a petition for the issuance of a writ of habeas corpus on December 3, 2002, alleging that an INS detainer has barred his release from state court custody and that the INS procedures have violated his constitutional rights.

The Government's motion was marked fully submitted on March 7, 2003, and opposed by Kendall on March 12 according to a letter from his counsel. No reply or memorandum has been received by chambers or docketed.

### The Facts

Kendall, a native and citizen of Guyana, was admitted to the United States as a lawful permanent resident on or about April 29, 1986. On September 7, 1988, in the New York State Supreme Court, Queens County, Kendall was convicted, upon a plea of guilty, of rape in the third degree in violation of N.Y. Penal L. § 130.25 ("rape conviction") and sentenced to a four-month term of imprisonment and five years' probation.

In June 2002, in the New York State Supreme Court, New York County, Kendall was indicted by a grand jury and charged with grand larceny in the second degree in violation of N.Y. Penal L. § 155.40(1); grand larceny in the third degree, in violation of N.Y. Penal L. § 155.35; five counts of criminal possession of a forged instrument in the second degree in violation of N.Y. Penal L. § 170.25; four counts of forgery in the second degree in violation of N.Y. Penal L. § 170.10(1); and offering a false instrument for filing in the second degree in violation of N.Y. Penal L. § 175.35. These charges arose from an alleged scheme on Kendall's part to obtain money from chari-

table organizations by falsely claiming that his son had died in the 2001 terrorist attacks on the World Trade Center.

On July 30, 2002, the INS lodged an "Immigration Detainer–Notice of Action" ("INS detainer") regarding Kendall with the warden of New York's Rikers Island Correctional Facility. The INS detainer indicated that "[i]nvestigation has been initiated to determine whether this person is subject to deportation," and requested that the warden "[a]ccept this notice as a detainer." The detainer stated that it "is *for notification purposes only* and *does not limit your discretion in any decision* affecting the offender's classification, work and quarters assignments, or other treatment which he would otherwise receive." (emphasis added). The detainer also requested, *inter alia,* that the warden notify the INS "of the time of [petitioner's] release at least 30 days prior to release or as far in advance as possible" and of any "transfer to another institution," and made reference to 8 C.F.R. § 287.7, which, under limited circumstances, requires a "criminal justice agency" to maintain custody of an alien subject to a detainer for a period "not to exceed 48 hours ... to permit assumption of custody by the [INS]."

On July 31, 2002, the INS sent Kendall a notice to appear ("NTA") charging him as a deportable alien. The basis of the charge was that Kendall's third-degree rape conviction constituted an aggravated felony within the meaning of section 101(a)(43)(A) of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1101(a)(43)(A), rendering Kendall deportable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).

Kendall's immigration case was scheduled for a hearing before an immigration judge ("IJ") in New York City on November 13, 2002. On October 13, 2002, although Kendall remained in New York State custody, his counsel submitted to the IJ a motion requesting that Kendall be released on his recognizance or that bond be set at $2,500. On or about November 4, 2002, the INS submitted to the IJ a motion to "administratively close" the proceedings on the basis that Kendall was, as he still is, detained at the Rikers Island facility and, consequently, could not be present for the scheduled hearing. The IJ did not hold court on November 13, 2002 and has yet to rule on the INS suspension motion.

On November 20, 2002, Kendall's counsel and an assistant district attorney ("ADA") appeared before New York State Supreme Court Justice Michael J. Obus for a hearing on Kendall's custody status. The ADA stated that if Kendall were released in the criminal case, the "INS will grab him," and that the INS had indicated that in such circumstances "[t]he closest place he could be sent would be upstate New York or New Jersey." Tr. 3. Defense counsel represented that the INS detainer "would be likely ... remove[d]" if the IJ granted the INS's suspension motion, and argued that Kendall "has a right to be released on bail." Tr.5.

Justice Obus reviewed the INS's suspension motion and stated that "[e]ven if [petitioner] were to be granted bail, in our case, there is a detainer and ... he would be held in INS custody and detained outside of New York City" and that it seemed to the State Court that INS did not "intend to release him if there isn't a case that's holding him," Tr.6. The Court stated that a bail bond has "been posted," that questions regarding "the source of the funds" had been resolved, and that the bond "is in place now only with everybody's understanding in order to resolve

the question of the INS matter," Tr.6, and then stated:

> But what is really before the Court now is whether or not any bail bond should be filed at all or accepted at all. Not in terms of the source of the funds, but *whether it's appropriate to have [petitioner] released on a bond in this case given the context including the immigration matter.*
>
> As far as I am concerned, it is not appropriate, unless I know that [petitioner] is going to be able to be here. And what I have now is an immigration hold that is in effect. And even according to [the INS suspension motion] [sic]. The whole purpose of that is to await the outcome of this case with the understanding that [petitioner] will be held on this matter ...
>
> And it also indicates that the motion for bond on the INS matter is ... totally without merit aside from being currently unripe.
>
> So for the reasons we have put on the record before and now, while I recognize that the bail bond is otherwise proper ..., *I am directing that [petitioner] be remanded at this point on this case* until and unless something changes with the INS.
>
> I do not think it's appropriate for him to post bail, be removed from our jurisdiction and then we'll be unable to deal with him, especially when it appears that the entire question is academic as long as there is a detainer lodged.

Tr. 6–7 (emphasis added).

Defense counsel then stated that Kendall "intend[ed] to proceed to the District Court on a habeas writ," and asked "the Court to at least allow the bond to remain pending a decision from the District Court regarding ... the action of the INS on the matter." Tr. 8. Asserting that "[t]o leave a detainer remaining on [petitioner's] file,

he's basically being deprived of his right to have a bond posted in this case," counsel requested that "the bail conditions ... remain in this case subject to us bringing a decision from the Federal Court ... regarding his pending release on this case." *Id.* After further discussion, Justice Obus stated:

> The bond ... is not accepted and it will not be accepted until and unless INS resolves their detainer and the [State] Court makes a specific ruling to that effect.
>
> So there should be no question of [petitioner] somehow being automatically released upon somebody else's say-so. *The [State] Court will have the say-so.*

Tr. 11 (emphasis added). The criminal case was set for trial on January 6, 2003, Tr. 14, and apparently rescheduled to February 6, 2003.

### The Petition Is Dismissed For Lack Of Jurisdiction

██ A writ of habeas corpus is an order "upon the *person* who holds [the prisoner] in what is alleged to be unlawful custody." *Braden v. 30th Jud. Cir. Ct. of Kentucky,* 410 U.S. 484, 494–95, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (emphasis added). A detainee's "custodian" for purposes of habeas jurisdiction "is the warden of the prison or facility where the detainee is held[,] ... because it is the warden that has day-to-day control over the prisoner and who can produce the actual body." *Yi v. Maugans,* 24 F.3d 500, 507 (3d Cir.1994) (citations omitted); *accord Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 948 (2d Cir.1976) (warden of correctional facility where petitioner is incarcerated, not parole board, is "custodian" of detainee "who is under the control of [the] warden and confined in a prison, and who is seeking, in a habeas corpus action, to be released from precisely that form of confine-

ment"); *Guerra v. Meese,* 786 F.2d 414, 416 (D.C.Cir.1986) (warden of petitioner, not parole board, is proper respondent to habeas petition because parole board does not have day-to-day control); *Carvajales–Cepeda v. Meissner,* 966 F.Supp. 207, 209 (S.D.N.Y.1997) (SHS) (INS official "who . . . exercises no day-to-day control over . . . [the] alien" is not a proper respondent to a habeas petition).

■ Kendall has conceded that he "is an inmate presently incarcerated at Rikers Island Facility in the [C]ity of New York." Pet. 1. Accordingly, Kendall's custodian is the New York State official exercising day-to-day control over him, which would appear to be the warden of the Rikers Island facility where he is currently detained. In any case, the INS or the DOJ are not officials and in any event exercise no such control over Kendall. *See Billiteri,* 541 F.2d 938, 948 (2d Cir.1976); *Yi,* 24 F.3d at 507; *Guerra,* 786 F.2d at 416; *Carvajales–Cepeda,* 966 F.Supp. at 209.

Assuming, *arguendo,* that there was any impropriety in the State Court's decision to remand Kendall to state custody, the decision to retain custody of Kendall was made by a New York State Court, and, as a consequence, Kendall is still in pretrial detention in his New York State criminal proceeding and his custodian, for purposes of habeas jurisdiction is a New York State official.

Accordingly, because Kendall has named no New York State official as respondent, the petition will be dismissed for lack of jurisdiction. *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is *in custody* in violation of the Constitution or laws or treaties of the United States . . .") (emphasis added); *Billiteri,* 541 F.2d at 948 (because habeas petition was not directed at official with custody of petitioner, the "case must be dismissed for lack of

jurisdiction"); *Campillo v. Sullivan,* 853 F.2d 593, 595 (8th Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989) ("The writ of habeas corpus functions to grant relief from unlawful custody or imprisonment. Absent custody by the authority against whom relief is sought, jurisdiction usually will not lie to grant the requested writ.").

■ Nor may Kendall maintain a habeas action on the basis of the allegation that he "is being detained pursuant to a detainer filed by the [INS]." *See* Pet.1. The INS detainer only constitutes "a *notice* that future INS custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction, and . . . a *request* for prior notice regarding the termination of that confinement," *Roldan v. Racette,* 984 F.2d 85, 88 (2d Cir.1993) (emphasis added); *see also Campillo,* 853 F.2d at 595 ("The [INS] detainer . . . does not purport to [affect] [petitioner's] status as a sentenced federal offender, but merely notifies prison officials that a decision regarding his deportation will be made by the INS at some future date."); *Lepez–Mejia v. INS,* 798 F.Supp. 625, 627 (C.D.Cal.1992) (INS detainer "merely *notifies* the prison that the INS has some interest in a particular inmate, and asks prison officials to advise the INS when the inmate is about to be released.") (emphasis added).

The lodging of such a detainer "does not result in present confinement by the INS," *Roldan,* 984 F.2d at 88, and therefore is insufficient to support habeas jurisdiction. *See, e.g., Dearmas v. INS,* No. 92 Civ. 8615(PKL), 1993 WL 213031, at *3 (S.D.N.Y. June 15, 1993) ("The Court agrees with the clear majority of courts which have found that the filing of a detainer does not constitute 'custody' by the INS for purposes of habeas jurisdiction."); *Prieto v. Gluch,* 913 F.2d 1159, 1162–64 (6th Cir.1990) (holding that district court

lacked jurisdiction over habeas petition by federal prisoner seeking to challenge INS detainer because detainer is merely a notice, and lodging thereof does not constitute custody for habeas purposes); *Orozco v. INS*, 911 F.2d 539, 541 & n. 2 (11th Cir.1990) ("The filing of a detainer is an informal process advising prison officials that a prisoner is wanted on other pending charges and requesting notification prior to the prisoner's release," and the filing thereof, standing alone, "did not cause [petitioner] to come within the custody of the INS"); *Campillo*, 853 F.2d at 595 ("The filing of [an INS detainer] is insufficient ... to alter [petitioner's] status as a custodial detainee of the federal prison system. [Petitioner] may not challenge the detainer by way of habeas corpus until he is placed in the custody of the INS, an event which will not occur until [he] is released from his present term of confinement.").[1]

The language of the detainer informs the warden at Rikers Island that, "[y]ou are *advised* that the action noted below has been taken by [the INS] concerning [petitioner]," indicates that "investigation has been initiated to determine whether this person is subject to deportation ...," and states that "it is requested that" that warden take certain steps to keep the INS abreast of developments in Kendall's custody status and does not require that Kendall's present custodian do anything with respect to him.[2]

It appears that the State Court acted entirely independently in confining Kendall pending trial. *See* Tr. 7 (directing petitioner's remand to state custody), ("The [State] Court will have the final say-so."), and acted to prevent the INS from assuming custody of Kendall. *See* Tr. 7 (statement by State Court that "I do not think

**1.** *See also Cruz v. Molerio*, 840 F.Supp. 303, 305 (S.D.N.Y.1994) (citing the "many cases [that] have held that the lodging of a detainer does not effectuate INS 'custody' for the purpose of [habeas jurisdiction]"); *DiGrado v. Ashcroft*, 184 F.Supp.2d 227, 232 (N.D.N.Y. 2002) ("Although the INS has apparently lodged a detainer against [petitioner], doing so did not place [him] within the custody of the INS or provide habeas jurisdiction over the respondents."); *Fernandez–Collado v. INS*, 644 F.Supp. 741, 744 (D.Conn.1986) (Because "the I.N.S. detainer in no way subjects the petitioner to the custody of the I.N.S.," the alien confined in federal correctional institution "remains in the sole custody of prison officials" notwithstanding the lodging of a detainer, and "the requested relief from the I.N.S. is not presently available."). As the Second Circuit has indicated, the INS might have "technical custody" prior to the assumption of physical custody, but only in cases where deportation proceedings have already resulted in "determinations of deportability" and the detainers *"require*[ ] the deportees to be turned over to INS custody for deportation," *Waldron v. INS*, 17 F.3d 511, 516 (2d Cir.1993), *cert. denied*, 513 U.S. 1014, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994); *see*

*also Henderson v. INS*, 157 F.3d 106, 112–22 (2d Cir.1998) (discussing historical use of habeas corpus for review of certain statutory claims by aliens subject to administrative orders of deportation, and holding that 1996 amendments to immigration laws did not withdraw such jurisdiction), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999).

**2.** The detainer also makes reference to the requirement in 8 C.F.R. § 287.7 that, under certain circumstances, a criminal justice agency maintain custody of an alien for a short period to permit the INS to assume custody. Because this regulation applies only when an alien is not otherwise detained by a criminal justice agency, it does not apply to an alien who, like Kendall, has been remanded to custody in his pending criminal case. *See* Tr. 7. In any event, it is the regulation, not the detainer that requires such interim custody by a criminal justice agency, and the reference to that regulation in the INS detainer does not transform the detainer into anything more than a notice "that a decision regarding [petitioner's] deportation will be made by the INS at some future date," *Campillo*, 853 F.2d at 595.

it's appropriate for [petitioner] to post bail, be removed from our jurisdiction and then we'll be unable to deal with him"), (statement to State Court by ADA that "what we're trying to prevent" is "petitioner's release[ ] to INS custody") (statement by State Court that "the last thing I want is to have the bond accepted and then have [petitioner] removed by INS and then we don't have him"). That decision does not confer habeas jurisdiction on a federal court where such jurisdiction would not otherwise exist.

The essence of Kendall's challenge to his detention by New York State officials is that the "criminal court judge" has denied his rights. *See* Pet. 3. Kendall concedes, however, that redress in the New York Courts is available, *see* Pet. 3; and principles of federal-state comity require him to pursue state remedies. *Cf. Preiser v. Rodriguez,* 411 U.S. 475, 491, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (exhaustion rule in federal habeas corpus is "rooted in considerations of federal-state comity," defined generally as "a proper respect for state functions") (*quoting Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). Moreover, addressing Kendall's constitutional claims under such circumstances would contravene the "fundamental and long-standing principle of judicial restraint requir[ing] that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988).

■ In addition, to the extent that Kendall seeks an order directing federal authorities to release him or to permit him to seek bail in his immigration proceedings, the matter is plainly unripe for adjudication because the INS has never assumed custody of Kendall. A dispute is not "ripe" for judicial decision in the absence of "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (internal citation and quotation marks omitted). Thus, where "injunctive and declaratory remedies are sought ... courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution, that is to say, unless the effects of the administrative action challenged have been felt in a concrete way by the challenging parties." *Barillas–Alverez v. Reno,* No. 98 Civ. 5445(LAP), 2000 WL 204523, at *2 (S.D.N.Y. Feb.18, 2000) (citations and internal quotation marks omitted). In determining whether a dispute is ripe for review, the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" are taken into account. *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Here, although removal proceedings have been instituted against Kendall, he is not in INS custody and no hearing has taken place in the immigration case. Prior to the assumption of custody by the INS and the completion of such preliminary procedures, however, any dispute regarding Kendall's custody status in his immigration proceedings is hypothetical and therefore unfit for judicial decision. In requesting that the INS release him or afford him a bond hearing while he is in New York State custody, Kendall presents an entirely hypothetical dispute. In effect, he seeks an *in absentia* bail hearing to avoid the possibility of INS detention. Any such challenge is obviously premature.

Accordingly, because Kendall is in the custody of New York State officials and not the federal respondents, the Court lacks jurisdiction.

For the foregoing reasons, the petition for a writ of habeas corpus is dismissed.

Enter judgment on notice.

It is so ordered.